Curia, per

Evans, J.
The first question made in this case is, whether the Commissioners of New Town Cut are a separate and independent body, having the power to impose fines, and issue process to collect them. By the Act of 1721, sec. li, (9 Stat. 53,) certain persons are appointed Commissioners for that part of what was then St. Paul’s parish which lies on John’s Island; another set of Commissioners was appointed for Wadmalaw, a third for Edisto, and a fourth for that part of the parish extending from Wilton to the north branch of Stono. By the same Act, certain other persons are appointed for cleansing and enlarging the passage commonly called New Town Cut. By another clause of the Act, commissioners are appointed for James Island. Subsequently to the Act of 1721, the parish of St. Johns Colleton was taken off from St. Paul’s, and by an Act passed in 1741, (9 Stat. 126,) the commissioners of high roads, private paths, bridges, causeways, creeks, passages and water-courses, for the parish of St. John, in the county of Colleton, are declared to be one board. By the Act of 1721, and the subsequent Acts in relation to New Town Cut, a portion of the inhabitants residing without what is now St. John’s parish, are required to work on the New Town Cut, and from hence it is argued that the board of commissioners for this Cut is merged in the general board of the parish of St. John’s, by whom the default of the relator should have been tried, and process issued for the collection of the fine. I do not perceive in the Acts referred to, any foundation for such an inference. *406 The commissioners referred to in the Act of 1741, are those whose territorial jurisdiction lies within the parish of St. John’s, and cannotinclude New Town Cut, which is on James’ Island, and within the parish of St. Andrews. On looking through all the legislation on the subject of these water-passages, commonly called cuts, it is very obvious they are intended to be placed under the jurisdiction of the special commissioners, unconnected with the general board for the parish within which they lie. We are therefore of opinion the relator’s case was within the jurisdiction of the Commissioners for New Town Cut, and that they have been guilty of no usurpation of power in deciding it. The second ground for a prohibition is, that the warrant issued for the collection of the fine, was not issued in conformity to the Act of 1825, (9 Stat. 556.) Whether this, even if true, be any thing more than a mere irregularty, for which the proper remedy is trespass, and not prohibition, it is not necessary to decide. The Act of 1825, in all its provisions, applies exclusively to those bodies which, in the old Acts, are called commissioners of roads, private paths, bridges, creeks, &c., and in the later Acts are called simply commissioners of roads, and has no application to those special boards to whom is committed some special charge within the territorial .limits of the general board : such as the commissioners appointed for Lynch’s Causeway, and the various cuts which form a part of the inland navigation of the maratime districts of the State. For the law which regulates these special jurisdictions, we must refer to the Act of 1788, (9 Stat. 309,) which is a general law, applicable to all the boards of commissioners, whether general or special; and by that Act the warrant of distress for the collection of fines is directed to be issued under the hands of any three of the commissioners ; which was done in this case. A seal is not necessary where the law dispenses with it, or what is the same thing, directs the warrant to be under the hand of the commissioners, without requiring a seal. State vs. Vaughan, Harper, 313.
The only remaining ground which has been argued in this court is, that the fine was barred by the Act of 1748, (3 Stat, 701,) which limits prosecutions for the recovery of *407 fines and penalties to six months. This is no ground for prohibition. It was a matter of defence, which should have been made before the commissioners. But even if it were a ground of prohibition, it could not avail the relator. The default occurred on the 10th and 11th days of August, 1840, and it is stated in the suggestion that he was notified to appear before the board on the -day-of 1840, so that the notice, which was the first step-in the proceedings for the collection of the fine, was within six months from the default. And this notice, like the issuing of the warrant in the case of the State vs. May, suspended the statute. It can make no difference that the commissioners did not form a board and decide the relator’s case. On that day lie did not attend to make his excuse, nor does he allege that he had' any. The case was continued until the next meeting. It is wholly immaterial whether the fine was imposed or the execution issued within six months or not,‘provided the proceeding for enforcing the penalty was commenced within that time ; and this we think was done by the notice which was given. The motion to reverse the decision of the circuit court is dismissed on all- the grounds.
Richardson, O’Neall, Butler, Wardlaw and Frost, JJ. concurred. .